REDA PUMP COMPANY, A DIVISION OF TRW, INC., Appellant,

v.

James R. FINCK & Aetna Casualty & Surety Company, Appellees.

Supreme Court of Kentucky.

July 3, 1986.

Rehearing Denied Sept. 4, 1986.

William D. Grubbs, Richard H.C. Clay, Louisville, for appellant.

Mary Janice Lintner, Donald L. Cox, J. Ben Cress, Paul Baker, Louisville, for appellees.

VANCE, Justice.

The question is whether the contributory negligence of a claimant constitutes an absolute bar to recovery of damages in a products liability action.

The appellee, James R. Finck, was injured when a pump manufactured by appellant exploded while Finck was attempting to repair it. He sought damages based upon negligence, breach of warranty, and strict liability. The case was submitted to a jury under a comparative negligence instruction, and the jury found that appellant and Finck were each negligent and prorated liability 34.25% to Finck and 65.75% to appellant.

Aetna Casualty and Surety Company intervened and was permitted to recover the amounts it had paid to Finck as workers' compensation benefits. Because of the importance of the issue presented, we granted transfer of this appeal.

Appellant asserted at trial and contends on appeal that as a matter of law it was entitled to judgment because the contributory negligence of Finck constituted an absolute bar to his recovery of damages.

Kentucky has enacted a products liability act. K.R.S. 411.300—411.350. The act provides that "a 'products liability action' shall include any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, advertising, packaging, or labeling of any product." K.R.S. 411.300(1).

Pursuant to this definition, the action instituted by Finck is a "products liability action."

The products liability act, K.R.S. 411.-320(3) provides:

"In any product liability action, if the plaintiff failed to exercise ordinary care in the circumstances in his use of the product, and such failure was a substantial cause of the occurrence that caused injury or damage to the plaintiff, *the defendant shall not be liable whether or not said defendant was at fault or the product was defective.*" (Emphasis ours.)

The appellees contend (1) that the General Assembly did not intend in K.R.S. 411.-320(3) that contributory negligence should completely bar remedy and (2) if K.R.S. 411.320(3) is construed to be an absolute bar to recovery, it is unconstitutional.

We will examine first the meaning of the statute. On its face, it plainly states that in a products liability action in which the plaintiff is shown to be negligent and such negligence substantially contributed to his injury, the defendant shall not be liable for the injury regardless of the fact that the defendant may also have been at fault or the product defective.

We do not perceive any ambiguity in the wording of the statute. It is plain and clear on its face. We have long adhered to the rule in this jurisdiction that statutes will be construed according to the plain

meaning of the words contained in the statute.

In *Burrell v. Electric Plant Board,* Ky., 676 S.W.2d 231 (1984), we applied the rule and held the statute in question must be "held to mean what it plainly expresses." *Id.* at 234.

In *Bailey v. Reeves,* Ky., 662 S.W.2d 832 (1984) we said:

"We have a duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion. *Department of Revenue v. Greyhound Corp.,* Ky., 321 S.W.2d 60 (1959). A legislature making no exceptions to the positive terms of a statute is presumed to have intended to make none. *Commonwealth v. Boarman,* Ky.App., 610 S.W.2d 922 (1980)." *Id.* at 834.

In *Gateway Construction Company v. Wallbaum,* Ky., 356 S.W.2d 247 (1962) we expressed the rule in the following language:

"The best way in most cases to ascertain such intent or to determine the meaning of a statute is to look to the language used, but no intention must be read into the statute not justified by the language.... The primary rule is to ascertain the intention from the words employed in enacting the statute and not to guess what the Legislature may have intended but did not express.... Resort must be had first to the words, which are decisive if they are clear.... The words of the statute are to be given their usual, ordinary, and everyday meaning...." *Id.* at 249.

We find no merit in the contention that the General Assembly in K.R.S. 411.320(3) was merely acknowledging the state of the common law in negligence cases. The entire tenor of the Products Liability Act is to restrict and limit actions concerning products liability.

K.R.S. 411.310(1) creates a rebuttable presumption that a product was not defective if the injury or damage occurred either more than five years after the date of sale to the first customer or more than eight years after the date of manufacture. K.R.S. 411.310(2) created a rebuttable presumption that a product was not defective if the design, methods of manufacture, and testing conformed to the generally recognized and prevailing standards or the state of the art in existence at the time the design was prepared and the product manufactured.

K.R.S. 411.320(1) limits liability to that which would have occurred had the product been used in its original, unaltered, and unmodified form, and K.R.S. 411.320(2) precludes recovery by a plaintiff who performs an unauthorized alteration or modification of the product, which alteration substantially causes injury.

■ K.R.S. 411.320(3) absolutely bars recovery in cases where contributory negligence of the plaintiff substantially contributes to cause an occurrence which injures the plaintiff.

■ The whole focus of the products liability act tends toward a restriction of liability in products liability cases. We hold that K.R.S. 411.320(3), by its plain meaning, provides that contributory negligence of a claimant which is a substantial cause of the occurrence that caused injury or damage to him is an absolute bar to recovery of damages resulting from such injury. This statute was similarly construed by the United States District Court for the Eastern District of Kentucky in *Anderson v. Black & Decker (U.S.), Inc.,* 597 F.Supp. 1298 (1984).

■ Appellant further contends that if we construe K.R.S. 411.320(3) as we do here construe it, then the statute is unconstitutional because it establishes a different standard for recovery in products liability cases from that which is used in negligence cases generally.

This contention is premised upon our holdings in *Hilen v. Hays,* Ky., 673 S.W.2d 713 (1984), and *Tabler v. Wallace,* Ky. 704 S.W.2d 179 (1986).

In *Hilen, supra,* we adopted a comparative negligence rule in ordinary civil negli-

gence cases. In doing so, we overruled by judicial fiat a long-standing rule that contributory negligence was an absolute bar to recovery. In *Hilen* we did not question the fact that the effect to be accorded to contributory negligence is a matter of public policy nor the absolute right of the General Assembly to determine public policy issues. Instead, we justified the right of this court to overturn the long-established rule upon the ground that it was a court-made rule in the first place. We reasoned that a rule promulgated by a court could be changed by a court.

Our opinion pointed out that our General Assembly, on many occasions, had the opportunity to express the public policy of the state on this issue, but had declined to do so, and a majority of the court felt that the fact that the General Assembly, on more than one occasion, had failed to pass bills which were introduced to overturn the long-standing contributory negligence rule did not amount to legislative ratification of the rule as it then existed. In *Hilen, supra,* we pointed out that whether contributory negligence constitutes a complete bar to recovery in product liability cases remained an open question for a case in point.

In *Tabler v. Wallace, supra,* we held K.R.S. 413.135 to be unconstitutional as special legislation because there was no rational basis for a difference in statutes of repose as applied to the purveyor of goods and the purveyor of services. It is contended here that there is no reasonable basis for a different contributory negligence standard to be applied in actions involving products than is applied in other negligence actions.

This contention resolves itself into an argument that because we held by judicial fiat in *Hilen, supra,* that in ordinary civil actions contributory negligence shall have a different effect from that which the General Assembly has plainly ascribed to it in products liability actions, we must now declare the policy clearly established by the General Assembly to be unconstitutional because it conflicts with the policy created by this court.

To so hold would constitute the ultimate arrogation of power unto ourselves. We adhere to the principle that the establishment of public policy is the prerogative of the General Assembly. If there is any present conflict or confusion in the law applicable to products liability actions it is of our own making. We resolve the issue now by holding that K.R.S. 411.320(3) absolutely bars recovery in products liability options where the plaintiff is contributorily negligent and his negligence is a substantial cause of the occurrence which caused his injury, and by further holding that K.R.S. 411.320(3) is not unconstitutional.

Appellee contends that in the event the judgment is reversed, the case should be remanded for retrial. However, the issue of Finck's negligence was submitted to the jury, and he was found to be contributorily negligent. We are not cited to any reason why that finding is erroneous except the postulation by appellee that if the jury had known a finding of contributory negligence would bar appellee's recovery, the jury might have found him free of contributory negligence. We cannot countenance an argument premised upon a supposition that a jury being convinced of one state of facts would make a finding diametrically opposite solely in order to permit a recovery by the plaintiff.

The judgment is reversed with direction that the complaint and the intervening complaint be dismissed.

STEPHENS, C.J., and WHITE, GANT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate attached opinion.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

On this same day in another case we will hand down an opinion that the words, "to meet the witnesses face to face," in the Bill of Rights in our Kentucky Constitution, should be given a contemporaneous con-

struction allowing videotape testimony instead of direct confrontation in order to accommodate the victims of child abuse. *Commonwealth v. Willis*, Ky., 716 S.W.2d 224 (1986). Inconsistently, in the present case we reject contemporaneous construction and hold to a literal construction of the words of the contributory negligence section in the Products Liability Act. When we do so, we disregard both historical context and the fabric of the law.

One law, contemporaneous construction, for the child abuse victim; a different law for the tort victim. Perhaps we should reexamine the Biblical precept that there shall be one manner of law that shall apply to the stranger and the native alike. Leviticus 24:22.

The present Opinion proceeds from two premises: (1) that KRS 411.320(3) should be "construed according to the plain meaning of the words"; and (2) the statute represents "policy clearly established by the General Assembly."

Neither premise applies in this case unless we totally ignore the statute's historical context. The opposite side to the "plain meaning" doctrine is that we do not accord words of a statute their literal meaning where "to do so would lead to an absurd or wholly unreasonable conclusion." *Bailey v. Reeves*, Ky., 662 S.W.2d 832, (1984).

The historical context in which this section of the Products Liability Act was enacted was the then ongoing nationwide debate as to whether to allow contributory negligence to be utilized to any extent *at all* as a defense in a products liability action based on strict liability in tort. At the time the new theory of strict liability in tort for manufacturers and distributors of defective products had been relatively recently established by § 402A of the *Restatement (Second) Torts*, adopted in Kentucky in *Dealers Transport Co. v. Battery Distributing Co.*, Ky., 402 S.W.2d 441 (1966). The *Restatement* raised the issue as to whether and to what extent courts should permit a defendant charged with this new theory of liability to interpose as a defense

the contributory negligence of the product user or consumer. Comment n, Section 402A of the *Restatement (Second) Torts.* In 1978 when our General Assembly enacted the Products Liability Act, this debate was still largely unresolved, although there were a number of prominent cases from elsewhere around the country holding that contributory negligence was not an available defense in products liability actions. To name a few: *Luque v. McLean*, 8 Cal.3d 136, 104 Cal.Rptr. 443, 501 P.2d 1163 (1972); *McCown v. International Harvester Co.*, 463 Pa. 13, 342 A.2d 381 (1975); *Rogers v. Toro Mfg. Co.*, 522 S.W.2d 632 (Mo.App.1975).

No doubt this section of the Products Liability Act, KRS 411.320(3), was the General Assembly's policy pronouncement to end the debate for Kentucky as to whether contributory negligence should be permitted as a defense in a products liability action. But to extend the meaning of the words of the statute beyond their historical context is to adopt "an absurd or wholly unreasonable conclusion." *Bailey v. Reeves, supra.* Justice should be blind, but not mindless.

*Hilen v. Hays*, Ky., 673 S.W.2d 713 (1984), did not change the nature of contributory negligence as a defense to tort actions. It simply stated that "[h]enceforth ... contributory negligence ... will not bar recovery but shall reduce the total amount of the award in the proportion that the claimant's contributory negligence bears to the total negligence that caused the damages." 673 S.W.2d at 720.

The Products Liability Act was written in the era of consumer protection, negating the premise that when the General Assembly wrote the Act they intended to provide a harsher rule for contributory negligence in products liability actions than would apply to other tort actions. To give the Act such a construction is *our* policy, not theirs. Contributory negligence is now only a *pro tanto* defense in other tort actions. A products liability defendant should be afforded no greater protection

than is available to others who cause wrongful injury.

It is noteworthy that after our decision in *Hilen v. Hays, supra,* the General Assembly met and rejected a number of suggestions to alter or abolish the comparative negligence doctrine stated therein. Seemingly this vindicates the premise stated in *Hilen v. Hays* that legislative inaction in the face of the broad demand to mitigate the harsh doctrine of contributory negligence as a complete defense did not express a legislative policy favoring such a doctrine, but, on the contrary, only legislative inertia and a commendable predisposition to leave to the courts the decision as to which rule will better accommodate justice in the courtroom.

We have already discussed the historical background for the contributory negligence provision in the Products Liability Act in *Hilen v. Hays, supra,* stating:

"[F]rom its background it is clear that the legislative purpose was to deal with the availability of contributory negligence as a defense in products cases and not with whether contributory negligence should result in a complete bar or a proportionate recovery." 673 S.W.2d at 715.

This portion of our decision was not dictum. It was a necessary predicate to our decision that "an historical review compels the conclusion that the contributory negligence rule as it applies to this case is court-made law that bears the imprimatur of neither the Kentucky Constitution nor the General Assembly." 673 S.W.2d at 715–16. Although *Hilen v. Hays* did not decide the issue now before us, it was dispositive of the historical perspective of the present statute, which the present opinion chooses to ignore.

The present Majority Opinion implies some criticism of *Hilen v. Hays,* Ky., 673 S.W.2d 713 (1984), which is both unnecessary and out of place. Five Justices of this Court signed on in *Hilen v. Hays.* There is no reason to term it "judicial fiat" or to suggest that we created "confusion in the law applicable to products liability actions."

That Opinion will stand on its own merits. The question is, will this one?

The present opinion creates a special status for contributory negligence in products liability actions, different from its status in other tort actions. This is precisely the kind of special treatment which we condemned in *Tabler v. Wallace,* Ky., 704 S.W.2d 179 (1986), which requires "a constitutionally acceptable reason to discriminate between goods and services." 704 S.W.2d at 186. *Tabler v. Wallace* addresses § 59 of the Constitution, which seeks to protect the people from legislation creating arbitrary classifications "not based upon a natural, real or substantial distinction inhering in the subject matter." *City of Louisville v. Klusmeyer,* Ky., 324 S.W.2d 831, 834 (1959). In like manner the decisions of our court should not interpret statutes which were not arbitrary and discriminatory when written so as to become so in application. We do this in this case by discriminating against those who are injured by product defects. We discriminate against these victims whether their cause of action sounds in negligence, in warranty, or in strict liability under § 402A of the *Restatement.*

Constitutionally impermissible discrimination is no less so because it results from chronological events than when it is patent from the words of the statute. In *Louisville & Nashville R.R. Co. v. Faulkner,* Ky., 307 S.W.2d 196 (1957), we held that a statute requiring railroad companies to overcome a presumption of negligence when any of their cars injured livestock was unconstitutional because it discriminated against railroads as distinguished from other forms of motorized transportation. This was so even though the statute would not have functioned in a discriminatory manner in 1893 when the statute was passed because these other forms of motorized transportation did not then exist. We stated that the purpose of § 59 "is to place all persons similarly situated upon a plane of equality and to render it impossible for any class to obtain preferred treatment." 307 S.W.2d at 198. We quoted from the

opinion of Mr. Justice Brandeis in *Nashville, C. & St. L. Ry. Co. v. Walters,* 294 U.S. 405, 55 S.Ct. 486, 488, 79 L.Ed. 949:

"A statute valid when enacted may become invalid by change in the conditions to which it is applied."

In *In re: Beverly Hills Fire Litigation,* Ky., 672 S.W.2d 922, 926 (1984), we took care to construe a statute purported to create a liability rule for certain persons engaged in the building industry different from the general rule so as to avoid unconstitutional application. We recognized the constitutionally impermissible arbitrariness which "would result in the same product having immunity in some circumstances and not in others...." By the same token we should now construe the Products Liability Act so as to avoid constitutionally impermissible arbitrariness favoring products liability defendants over other defendants charged with similar misconduct.

To illustrate how this opinion results in "an absurd or wholly unreasonable conclusion" (*Bailey v. Reeves, supra*), consider its impact in those cases where there are multiple defendants with different theories of liability against these defendants, or multiple theories of liability against a single defendant, some sounding in products liability, some negligence, and some mixed.

For instance, in a recently settled case a young adult, at night, dove into the shallow end of a swimming pool at a resort motel. The cause of action against the motel owner charged that the swimming pool was defectively constructed because of failure to properly mark depth designations, and also charged negligence in failing to provide a lifeguard while the pool was open. Thus the theory of liability was a mix of defective product and negligent services. Which rule should the trial court apply in such circumstances to the defendant's claim of contributory negligence? Is contributory negligence a *pro tanto* defense or a complete defense? How can the trial court instruct the jury so as to accommodate the two different rules of law which will now apply to the same action?

Next, consider what will happen in a case arising out of a motor vehicle collision where the defendant answers that the plaintiff was guilty of contributory negligence, and then files a third party complaint against his car's manufacturer alleging that a defect in the car was a contributing factor. The defendant motorist has a statutory right to contribution from the car manufacturer under KRS 412.030. The car manufacturer will claim it has no liability for contribution because of our decision in this case. It will be a practical impossibility to fashion a correct instruction or to render a coherent verdict.

Next, consider the quandary in a hospital/medical negligence/defective prosthesis case, where there are multiple defendants and multiple cross-claims, and the theory of liability against some is negligent services, some products liability based on § 402A of the *Restatement* or breach of warranty, and some mixed. How can the trial court apply the rule of law of this opinion in such a case?

It should be unnecessary to further illustrate the problems that will be caused by this opinion. This decision is an indigestible stew, full of bits and pieces that won't go down together, and, if forced down, won't stay down.

The General Assembly wrote the Products Liability Act before the advent of comparative negligence. Thus the genesis of this opinion cannot be in a legislative mandate preferring contributory negligence as a complete defense over comparative negligence. Its genesis is in how our Court perceives the legislative mandate. This opinion represents a major shift in the direction of the law on liability for defective products, a shift made by us and not by the legislature. Originally the debate was over whether the manufacturer of a defective product should be permitted to interpose contributory negligence as a defense *at all;* whether it should be treated differently in products liability cases than it is in other kinds of cases. We have gone 180° in the opposite direction. We now hold that products liability defendants shall not bear their

share of the responsibility for injury or damage caused by defective products in the same manner that other types of defendants are now called upon to bear their share of responsibility. This is a major shift in the direction of the law with which I cannot agree.